UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14-cv-00057-JHM

MARTHA MITCHELL                                                                  PLAINTIFF

v.

CARHARTT, INC.                                                        DEFENDANT/
THIRD PARTY PLAINTIFF

v.

QUEST DIAGNOSTIC CLINICAL               THIRD PARTY DEFENDANT
LABORATORIES, INC.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DN 42]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's Motion is **GRANTED**.

### I. BACKGROUND

On May 9, 2014, Plaintiff Martha Mitchell filed her Complaint in Hopkins County Circuit Court alleging claims of negligence and failure to warn against Defendant Carhartt, Inc. (Def.'s Mem. Supp. Mot. Summ. J. [DN 42-1] at 5–6.) Defendant successfully removed the action to this Court pursuant to 28 U.S.C. § 1332(a). (Id. at 6.) Plaintiff's action stems from an incident that occurred at Defendant's facility in Hanson, Kentucky. (Id. at 1.)

Defendant contracted with Quest Diagnostic Laboratories (hereinafter "Quest") to provide health screenings for Defendant's employees at a health fair between August 5, 2013 and August 8, 2013. (Id. at 2.) Quest then contracted with Plaintiff and her sister, Mayme Downs (hereinafter "Downs"), to conduct the screenings at Defendant's facility. (Id.) On the morning

of August 5, 2013, Plaintiff and Downs first arrived at Defendant's facility and entered through the left set of double doors at the front entrance.[1] (Downs Dep. [DN 42-3] at 35.) That afternoon, Plaintiff and Downs exited the facility for lunch, through the right of the two sets of double doors. (Id. at 41–42.) Upon returning from lunch, Plaintiff and Downs reentered through the left set of doors. (Id. at 46.) And, following the afternoon shift, Plaintiff and Downs once again exited out the right set of doors. (Id. at 49.) Plaintiff and Downs traveled together each time, walked facing forward, and had no trouble using these doors during any of these four trips. (Def.'s Mem. Supp. Mot. Summ. J. [DN 42-1] at 2–3.)

On August 6, 2013, Plaintiff and Downs returned to Defendant's facility for the second day of the health fair. (Id. at 3.) They followed the same pattern as the first day: together they entered face-forward through the left set of doors twice, and they exited face-forward through the right set of doors twice. (Id.) They experienced no problems while using these doorways. (Id.)

On August 7, 2013, Plaintiff and Downs once again returned to Defendant's facility to conduct additional health screenings. (Id.) Together, face-forward, and with no problems, they entered through the left set of doors in the morning, exited through the right set of doors before lunch, and entered through the left set of doors after lunch. (Id.) At the end of the day, Downs visited the restroom while Plaintiff exited the facility with fellow Quest employee Jennypher Williams (hereinafter "Williams"). (Id.) As she approached the doorway, Plaintiff was pulling medical equipment on wheels behind her. (Id. at 4.) As she got closer to the rightmost door, Plaintiff turned around to face the inside of the facility and pushed the door open while walking backwards. (Id.) Williams testified that as Plaintiff pushed the door open with her back, the

---

[1] When inside Defendant's facility, looking at the doors in question, there is a set of double doors to the left and another set to the right. They are next to each other, and within each set of double doors is also a distinct left door and right door. For the purposes of this Opinion, all references to the doors will be to the doors at the entrance of the facility and will be from the perspective of someone inside of the facility looking directly at the doors.

door mat jammed under the bottom of the door and buckled, which then caught the back of Plaintiff's foot as she was walking backwards and caused her to fall in the doorway. (Id.) However, Williams, pulling a larger cart of supplies, exited face-forward out the left door at virtually the same time as Plaintiff but did not fall over the buckled mat. (Id.)

On August 8, 2015, Plaintiff returned to Defendant's facility, and she entered facing forward through the left set of doors in the morning before the fair and exited facing forward through the right set of doors (the same doors through which she fell the day prior) at the close of the fair around lunch time. (Id. at 3–4.) Plaintiff and Downs did not have any problems passing through the doorways on the fourth day. (Id.) Downs further testified that Plaintiff would take occasional "smoke breaks" throughout the entirety of the health fair, probably using the same sets of doors. (Downs Dep. [DN 42-3] at 50.)

Additionally, Williams testified that she never witnessed the mat catching on the door and buckling at any other time during the health fair. (Williams Dep. [DN 42-4] at 40.) Eugene Summers (hereinafter "Summers"), the Distribution Operations Manager at Defendant's facility, and Brenda Hart (hereinafter "Hart"), the Safety Programs Specialist at Defendant's facility, similarly testified that during their respective twelve and a half years and seven years of employment neither had ever seen or heard of anyone else falling at the entrances or exits of Defendant's building. (Summers Dep. [DN42-5] at 23; Hart Dep. [DN 42-6] at 43.)

Defendant notes that both Plaintiff and Defendant have enlisted experts for this action. Plaintiff's expert, Anthony P. Ehlers (hereinafter "Ehlers"), a licensed professional engineer, made no definitive determinations in his report. (Ehlers Report [DN 38-1].) From the surveillance video, Ehlers found that the mat "appear[ed] to be rather lightweight," and it seemed to be flexible, as it "slid and buckled rather easily." (Id. at 3–4.) Ehlers' findings were limited,

3

as he did not examine the mat, but he did state that testing, inspection, or a site review could provide more a more concrete analysis. (Id. at 4.) Defendant's expert, Lori L. Cox (hereinafter "Cox"), a licensed professional engineer, did have a chance to inspect the mat in question. (Cox Report [DN 36-1] at 8.) She determined that the mat complied with the standards of the National Floor Safety Institute, as it was suited for medium to high traffic, was of substantial weight, and was designed for outdoor use. (Id. at 8.) Both experts agreed that the mat caused Plaintiff's fall.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. From there, the non-moving "party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." In re Morris, 260 F.3d 654, 655 (6th Cir. 2001); see Fed. R. Civ. P.

4

56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. Overall, "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Id. at 249.

### III. DISCUSSION

In Kentucky premises liability actions, the burdens of proof for summary judgment are contextually nuanced. Once the moving party meets its initial burden, and when the non-moving party is a business invitee, as is the case here, the non-moving party must prove three things in order to survive a summary judgment motion:

> (1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees.

Martin v. Meckenhart Corp., 113 S.W.3d 95, 98 (Ky. 2003). If the non-moving party does satisfy all three prongs, the "burden of proof would then shift to [the moving party] to establish that even in the face of a dangerous condition, it still exercised reasonable care and was not negligent in maintaining its premises." Roberts v. Jewish Hosp., Inc., No. 2012-CA-001182-MR, 2013 WL 5048294, at *3 (Ky. Ct. App. Sept. 13, 2013). The last shift derives from the premise that "a possessor of land has a duty to maintain reasonably safe premises for its patrons. This duty involves the responsibility to 'discover unreasonably dangerous conditions on the land and either correct them or warn of them.'" Dick's Sporting Goods, Inc. v. Webb, 413 S.W.3d 891, 897 (Ky. 2013) (quoting Kentucky River Med. Ctr. v. McIntosh, 319 S.W.3d 385, 388 (Ky. 2010)).

To survive summary judgment per Martin, the plaintiff must first establish that a dangerous condition existed at the time of the fall. According to Kentucky case law, "a commercial grade safety mat properly placed on a floor, in and of itself, is not a dangerous condition." Roberts, 2013 WL 5048294, at *3 (citing Bartley v. Educ. Training Sys., Inc., 134 S.W.3d 612, 614 (Ky. 2004); Robinson v. Sw. Bell Tel. Co., 167 N.E.2d 793, 796 (Ill. App. Ct. 1960) (noting that "the use of ordinary floor mats to assist pedestrians is perfectly reasonable, and the fact that a person trips on one of them is no evidence of negligence")). Plaintiffs are typically required to show some "imperfection, defect, or dangerous condition," like a particularly hazardous "defect in the rug, any overlapping of rugs, or anything more than the mere fact there was a rug or mat on the floor." Id. at *3–4 (citing Leach v. Sibley, Lindsay & Curr Co., 15 N.Y.S.2d 287, 288 (City Ct. 1939)). A plaintiff could also show that the "mat was frayed, askew, concealed, inappropriate or inadequate for its intended purpose." Id. at *3. Without evidence of a dangerous condition, a defendant cannot be held liable, as "[t]ripping or slipping of itself is not enough to establish an unsafe condition." Id. at *4 (citing Leach, 15 N.Y.S.2d at 288).

For example, in Bartley, upon which Plaintiff heavily relies, a student caught her foot underneath a carpet remnant that was used as a floor runner at the defendant's school, causing her to trip and sustain injuries. Bartley v. Educ. Training Sys., Inc., 134 S.W.3d 612, 613 (Ky. 2004). The Supreme Court of Kentucky found that the carpet runner "was not a specially designed and produced carpet runner for commercial use," as it "was only a carpet remnant left over from the wall-to-wall carpeting" and "lacked proper edging and backing material." Id. at 615. Therefore, "a reasonable inference [could] be drawn that the carpet runner constituted an unsafe condition" as to preclude summary judgment. Id. Moreover, summary judgment cannot

be granted when Plaintiff's evidence establishes a question with respect to the dangerousness of the mat. See Stelly v. Dolgencorp LLC, No. CIV.A. 6:14CV694, 2015 WL 5016488, at *5 (W.D. La. Aug. 21, 2015) (denying summary judgment because surveillance video showed the mat was "misplaced, in that a portion of it appear[ed] to be pushed up against the threshold of the entrance to the store," the store employee recognized the wind blew the mat askew regularly, and store owner complained to manufacturer of the rugs about them slipping); Camizzi v. Tops, Inc., 244 A.D.2d 1002 (N.Y. App. Div. 1997) (denying summary judgment because plaintiff established "that the mat buckled on several occasions each day as customers entered store and as employees pushed shopping carts into store; and that the store manager was aware that the mat buckled each day and that the buckling constituted a tripping hazard"); Cook v. Food Lion, Inc., 491 S.E.2d 690, 692 (Ct. App. 1997) (finding whether the mat constituted a dangerous condition was for the jury because "testimony of . . . proffered witnesses indicated the mats had a tendency to wrinkle, creating a dangerous condition," and the defendant "was aware of the tendency").

Contrastingly, in Roberts, the plaintiff was visiting a friend at the hospital when her foot caught on a safety mat near a revolving exit door, causing her to fall into the door and suffer an injury. 2013 WL 5048294, at *1. The plaintiff presented no evidence to show the condition of the mat or to prove that it was somehow defective or dangerous. Id. at *4. She "established only that there was a safety mat on the floor;" and, with no further evidence of a dangerous condition, she could not prevail "under any circumstances." Id. Courts have long held that when a plaintiff fails to show sufficient evidence as to the dangerous condition of the mat in question, he cannot prevail against a motion for summary judgment. See Porges v. Wal-Mart Stores, Inc., No. 09 C 3705, 2011 WL 939922, at *9 (N.D. Ill. Mar. 15, 2011) (ruling that because of her "inability to demonstrate that the mat she tripped on was defective, poorly maintained, or negligently

installed," plaintiff's "failure to show that Sam's Club placed the floor mat negligently in the vestibule [was] fatal to her claim"); Harrison v. The Pantry, Inc., No. 1:04-CV-318, 2005 WL 2671244, at *3 (E.D. Tenn. Oct. 19, 2005) (noting that though the plaintiff lamented the inadequateness of the floor mats in her brief, stating she knew the floor "mats could fold over," she offered no proof, in affidavits or depositions, the floor mat was in poor condition or constituted a dangerous condition); Washington v. J.D. Royer Wholesale Florist, 620 S.E.2d 626, 627 (Ga. App. 2005) (granting summary judgment for defendant because "there was no evidence that the mat demonstrated any tendency to get caught on store's door and turn up or otherwise presented any hazard before the moment when patron pushed the door open").

Here, Defendant's Motion for Summary Judgment meets its initial burden, thus the burden of proof shifts to Plaintiff. Under Martin, Plaintiff must first show that she encountered a dangerous condition, 113 S.W.3d at 98, and it is her affirmative duty to direct the court to specific facts and evidence to establish that a question of fact remains regarding the dangerous condition of the mat, Morris, 260 F.3d at 655. Though Plaintiff states that questions of fact exist, Plaintiff's Response lacks the hallmark of a successful action, such as a showing that the mat in question was somehow improperly suited for its use, that witnesses often saw it buckle, or that it was negligently misplaced.

In her Response, Plaintiff merely alleges that "whether the maintenance, condition or placement of the mat created a dangerous condition remains in dispute," yet she does not elaborate on this assertion. (Pl.'s Resp. [DN 45] at 4.) The only factual contention Plaintiff makes in her Response regarding the state of the mat is that it was "in a visibly worse condition than all of the other mats on the premises." (Id. at 8.) But, this assertion in Plaintiff's brief alone cannot create a genuine issue of fact because Plaintiff does not point to any evidence in the

record to support it.  This Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  Therefore, simply stating that questions of fact remain, yet failing to point to any supportive evidence, will not preclude summary judgment because "it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted).

       The evidence that Plaintiff utilizes in her Response does not show a genuine issue of fact.  She provides excerpts from several depositions, including those of Williams, Summers, and Hart; yet, not one of either party's exhibits establishes that the mat was somehow defective or hazardous.  In fact, all the testimony in the record corroborates the fact that Plaintiff had no trouble walking over the mats in Defendant's doorways eleven times in the three days before and including the day of the fall, two times on the day after the fall, or at any other time.  Summers and Hart in their long tenure as Defendant's employees had never once seen anyone else trip over the mat or the mat bunch under the door.  It appears that there is no genuine dispute of material fact regarding the maintenance, condition, or placement of the mat, as Plaintiff provides no evidence to address these issues, and all other evidence demonstrates that the mat posed no threat of harm.[2]

       Further, Plaintiff has procured Ehlers' expert report, which states that though he never examined the mat, it appeared lightweight and flexible.  Plaintiff ultimately does not even cite to

---

[2] Plaintiff additionally alleges that questions of fact remain regarding the ownership and identity of the mat, as two mats were placed outside Defendant's facility at the time of the fall and Plaintiff is unsure as to which she tripped over.  Plaintiff contends that these facts are material to deciding negligence in this case.  Ultimately, the ownership of the mat does not prove or disprove negligence, but rather the liability of parties.  And, the identity of the mat matters not when Plaintiff has failed to allege a dangerous condition in regards to any mat.

this report as evidence in her Response, and it is not the Court's duty to use it to construct an argument for her. Regardless of Plaintiff's use of it, the report alone does not provide enough evidentiary support to preclude summary judgment. It does not address questions concerning the maintenance, condition, and placement of the mat, which Plaintiff alleges are in dispute, and it is formulated wholly on "speculation and supposition," which "are insufficient to justify a submission of a case to the jury." O'Bryan v. Cave, 202 S.W.3d 585, 588 (Ky. 2006); see Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1134 (6th Cir. 1986); see also Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

Overall, Plaintiff's bald and conclusory statements that questions of fact remain regarding the dangerous condition of mat are unsupported by evidence in the record, meaning she cannot survive Defendant's Motion for Summary Judgment. See Roberts, 2013 WL 5048294, at *4; Porges, 2011 WL 939922, at *9; Harrison, 2005 WL 2671244, at *3; Washington, 620 S.E.2d at 627. Because Plaintiff has failed in her affirmative duty to point to specific facts and evidence per Rule 56, she has failed to demonstrate an issue related to the dangerous condition of the mat under Martin.[3] For this reason, Defendant's Motion for Summary Judgment is granted.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 42] is **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

November 2, 2015

cc: counsel of record

---

[3] In the pleadings, both Plaintiff and Defendant spend considerable amounts of time discussing the "open and obvious" doctrine. Because Plaintiff cannot satisfy the first prong of the Martin test, the "open and obvious" doctrine is moot for this action, as it would be applicable only if Plaintiff had met all three prongs of Martin.

10