UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14-CV-00057-JHM

MARTHA MITCHELL                                                                           PLAINTIFF

v.

CARHARTT, INC.                                                                            DEFENDANT/
                                                                            THIRD PARTY PLAINTIFF

v.

QUEST DIAGNOSTIC CLINICAL                                     THIRD PARTY DEFENDANT
LABORATORIES, INC.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant/Third Party Plaintiff Carhartt, Inc.'s motion for summary judgment as to its claim against Third Party Defendant Quest Diagnostic Clinical Laboratories, Inc. (hereinafter "Quest"). [DN 81]. Fully briefed, this matter is ripe for decision. For the reasons stated below, the motion for summary judgment is **DENIED.**

I. BACKGROUND

Quest contracted with Carhartt to provide certain laboratory testing, biometric measurements, and health questionnaire services to Carhartt's employees at a Carhartt facility in Hanson, Kentucky. Quest entered into a contract with Plaintiff, Martha Mitchell, in which she would perform said medical examination services for Carhartt's employees. Mitchell was to travel to Carhartt's facility and perform her services as an independent contractor. After performing her duties on August 7, 2013, Mitchell was exiting Carhartt's facility when she tripped and fell over a floor mat. Subsequently, Mitchell filed her Complaint in Hopkins County Circuit Court on May 9, 2014, which Carhartt later removed to this Court. Mitchell alleged that

Carhartt was negligent, as it had failed to warn her of the dangerous condition posed by the mat on Carhartt's property. Carhartt responded and filed a third party complaint against Quest, claiming a right to indemnification. This Court granted Carhartt's motion for summary judgment against Mitchell, finding Mitchell had not met her burden of proof to show that material questions of fact exist regarding the dangerous condition of the floor mat, thereby dismissing her claims against Carhartt. [DN 54].

Subsequently, Quest moved for summary judgment as to Carhartt's third party claims for indemnification. The Court dismissed Carhartt's claim of common law indemnification against Quest, as the Court's previous grant of summary judgment for Carhartt against Mitchell precluded any liability for which Quest would have to indemnify Carhartt. But the Court denied Quest's motion as to Carhartt's contractual claim of indemnification, under which it sought attorney's fees and other litigation costs it had incurred in defending itself in this case pursuant to the indemnification clause in the parties' contract. [DN 66]. Carhartt now moves the Court for summary judgment on its claim of contractual indemnification.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts*.*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. Discussion

#### A. Subject Matter Jurisdiction

At the outset, the Court must address whether subject matter jurisdiction exists over this dispute.  The Court expressed doubts as to whether subject matter jurisdiction remained over this claim in its order denying Quest's motion for summary judgment.  [DN 66].  In response, Carhartt sought leave of this Court to submit an amended complaint, which this Court granted [DN 75], and Carhartt then submitted an amended complaint stating this Court's basis for jurisdiction.  [DN 76].  Quest denied Carhartt's assertions of jurisdiction in its response [DN 78], but neither party fully addressed the matter in its filings pertaining to this motion for summary judgment.  [DN 81-1, 83, 84].  Regardless, this Court is "obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented" when the Court's subject matter jurisdiction is at issue.  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (citing *United Staets v. Cotton*, 535 U.S. 625, 630 (2002).

This case was originally removed to this Court by Carhartt on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. [DN 1]. Removal was taken when the case consisted only of Mitchell's claim against Carhartt. Subsequently, Carhartt filed its third party complaint against Quest without specifying this Court's basis for jurisdiction over that claim. [DN 9]. This Court's grant of summary judgment for Carhartt against Mitchell disposed of the original claim upon which this Court's subject matter jurisdiction existed. In its order denying Quest's motion for summary judgment against Carhartt as to the remaining indemnification claim, this Court expressed a reluctance to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367 but noted that it could not decline jurisdiction over the case if an independent basis for jurisdiction existed. [DN 66, at 5–6].

Carhartt's amended complaint states that jurisdiction exists under 28 U.S.C. § 1332 due to diversity of citizenship between the parties and its claim for contractual indemnification exceeding $75,000. Carhartt states that it is both incorporated and has its principal place of business in Michigan, while Quest is incorporated in Delaware with its principal place of business in New Jersey. Further, Carhartt pleads that it has incurred damages totaling at least $150,000 for which Quest is contractually liable.

The only doubt as to whether subject matter jurisdiction exists goes to the amount in controversy. "[T]he amount in controversy is determined as of the time of filing." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920 n.1 (6th Cir. 2000) (citing *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990)). Carhartt has not indicated what portion of its attorney's fees were incurred before it brought its third party action against Quest. Ordinarily, Carhartt would have to offer some evidence of what actual damages it had suffered up to the time of filing its claim against Quest to determine if those damages were sufficient to meet this Court's

jurisdictional requirement. However, "[d]amages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments . . . will be adjudged in the present suit . . . ." and "a plaintiff may properly include as part of the amount in controversy costs which will not be incurred until after the suit is ended." *Brogile v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (internal quotations omitted). In essence, Carhartt is seeking to recover from Quest any attorney's fees it has already incurred, as well as those it will continue to incur while litigating how the indemnification clause pertains to Carhartt's right to those same attorney's fees. Because of the nature of these continuing damages, it is not necessary for Carhartt to show that it had already incurred more than $75,000 in damages at the time of filing its third party claim against Quest, as it has sufficiently shown that there existed a good-faith basis for seeking damages greater than $75,000 at the time of filing its complaint. Therefore, the Court finds that subject matter jurisdiction exists pursuant to § 1332.

### B. INDEMNIFICATION CLAUSE

The indemnification clause at issue states,

> 6. INDEMNIFICATION: Quest Diagnostics and Customer will each indemnify, defend and save the other harmless from and against any and all losses, claims, suits, damages, liabilities and expenses (including without limitation reasonable attorney's fees) based upon, arising out of or attributable to the negligent and/or willful acts and/or omissions of such party, its employees, servants and/or agents. The provisions of this paragraph shall survive termination of this Agreement.

[DN 9-1, at 7]. In this current motion, Carhartt argues that there is no material fact in dispute that Mitchell, as Quest's employee or agent, acted (or failed to act) willfully when she walked backwards while pulling the medical cart and tripped on the floor mat in Carhartt's facility.

Willful "is a 'word of many meanings,' and 'its construction [is] often . . . influenced by its context.'" *Ratzlaf v. United State*s, 510 U.S. 135, 141 (1994) (quoting *Spies v. United States*,

5

317 U.S. 492, 497 (1943)). For example, willful is defined in the Uniform Residential Landlord and Tenant Act, as adopted by Kentucky, as "with deliberate intention, not accidentally or inadvertently, and done according to a purpose." KRS 383.545(17). In the context of many criminal statutes, including that which makes it a crime to willfully avoid paying income tax, willful has been defined as the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (interpreting 26 U.S.C. § 7203). *See also Ratzlaf*, 510 U.S. at 136 ("To establish that a defendant 'willfully violat[ed]' [a statute aimed at preventing the structuring of transactions so as to avoid the requirement that large transactions be reported to the Secretary of the Treasury], the Government must prove that the defendant acted with knowledge that his conduct was unlawful").

Carhartt argues that Mitchell acted willfully by walking backwards while pulling the cart of medical supplies, as "the actions were taken on Plaintiff's own volition, they were made voluntarily, and they were done intentionally." (Def.'s Mot. for Summ. J. [DN 81-1], at 10). In support of this argument, Carhartt cites to *Black's Law Dictionary's* definition of willful as "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary* (10th ed. 2014). Carhartt essentially argues that willful should be defined as to only require the actor to intentionally and voluntarily do the act (in this case, the walking backwards while pulling the cart), regardless of whether she intended the ultimate consequence (tripping over the floor mat and falling).

Carhartt is correct to note that "Kentucky courts have relied on Black's Law Dictionary to define the word 'willful.'" (Def.'s Mot. for Summ. J. [DN 81-1], at 7) (citing *Jones v. Dougherty*, 412 S.W.3d 188, 193 (Ky. Ct. App. 2012)). However, Carhartt merely cites to the first sentence of *Black's* entry on willful. The entire definition states,

> Voluntary and intentional, but not necessarily malicious. A voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong. The term *willful* is stronger that *voluntary* or *intentional*; it is traditionally the equivalent of *malicious, evil*, or *corrupt*.

*Black's Law Dictionary* (10th ed. 2014) (emphasis in original). Further, a prior edition of *Black's* defines willful so as to include acts where one "intend[s] the result which actually comes to pass." *Huddleston v. Hughes*, 843 S.W.2d 901, 905 (Ky. Ct. App. 1992) (citing *Black's Law Dictionary* (6th ed. 1990)). Taking these definitions, along with the other definitions of willful as it pertains to specific areas of law, the Court concludes that willfulness, as used in the indemnification clause, requires an intent to do an act, as well as an intent to bring about a particular result.

With this definition, it cannot be said that Mitchell acted willfully. The parties do not dispute that she intentionally took hold of the cart and began walking backwards while pulling the cart. But neither party suggests that she intended to trip over the floor mat or that her ultimate purpose was to fall while walking backwards. If all that Mitchell intended was to walk backwards while pulling the cart, then she did not act willfully as to the consequences for which Carhartt attempts to hold Quest liable.

Carhartt points to a number of instances where Kentucky Courts have required payment of attorney's fees because of an indemnification clause, even though the party being indemnified had already been relieved of any liability for the underlying act. However, those cases turned on the particular language in each indemnification clause. For example, in *Enerfab, Inc. v. Ky. Power Co.*, 433 S.W.3d 363 (Ky. Ct. App. 2014), the Kentucky Court of Appeals found that Enerfab was liable for Kentucky Power's attorney's fees in defending itself against a claim by one of its own employees that was ultimately dismissed due to the exclusive remedy provided for

7

under the Worker's Compensation Act. However, the indemnification clause in that case stated that Enerfab must indemnify Kentucky Power for all costs, including attorney's fees, that were "caused by [Enerfab], its employees, agents, or subcontractors, or in any way attributable to the performance of the contract, except . . . to any liabilities arising from [Kentucky Power's] sole negligence." *Id.* at 364. This indemnification clause is vastly different from the one in this case. In *Enerfab*, indemnification was required for *any* act caused by Enerfab that resulted in liability or costs to Kentucky Power, unless the act was the result of Kentucky Power's sole negligence. In this case, Quest need only indemnify Carhartt for negligent or willful acts (or omissions) committed by Quest, a much narrower set of circumstances under which indemnification is required. Thus, *Enerfab* and the other cited cases applying Kentucky law are inapplicable to this case. *See also Thompson v. The Budd Co.*, 199 F.3d 799, 808 (6th Cir. 1999) (clause requiring indemnification for all costs and attorney's fees except for those "clearly shown to have resulted solely and directly from [Budd's] gross negligence or willful misconduct"); *Vaughn v. Konecranes, Inc.*, 2015 WL 3453457, at *3 (E.D. Ky. May 29, 2015) (clause requiring indemnification for all costs "in any way arising out of the acts or omissions of the buyer"); *Quick Delivery of Kentucky, Inc. v. Payless Shoe Source, Inc.*, 2005 WL 3441360, at *1 (Ky. Ct. App. 2005) (clause requiring indemnification for "any and all claims . . . and expenses arising in any way out of your performance of this Agreement").

      Carhartt also argues that the indemnification clause should be interpreted so as to hold Quest liable, as the clause was in Quest's standard form, and any ambiguity in it should be interpreted against Quest. Kentucky courts do apply the doctrine of *contra proferentem*, interpreting ambiguous contracts against the drafter. *E.g. McMullin v. McMullin* 338 S.W.3d 315, 322 (Ky. Ct. App. 2011). However, that doctrine is only applicable upon there being an

8

actual ambiguity in the contract. A contract is only ambiguous if it is "reasonably susceptible to [more than] one meaning." *Nat'l Union Fire Ins. Co. v. Papa John's Int'l, Inc.*, 29 F. Supp. 3d 961, 971 (W.D. Ky. 2014). Upon first glance, "willful" may appear to be susceptible to multiple interpretations. Under one interpretation, that for which Carhartt argues, an actor need only intend to do the underlying act for it to be a willful action, regardless of their purpose or intent towards the resulting consequences. And under another interpretation, the act must be done with the intent to do it and the purpose to bring about an intended consequence. However, a review of the relevant authorities, as discussed above, demonstrates that almost all interpretations of willful require something more than just the intent to do the underlying act. Carhartt cites to one authority, *Black's Law Dictionary*, in support of its interpretation, but even that source defines willful as requiring some heightened form of intent.

Further, Kentucky courts are to interpret contractual provisions so as to "give[ ] a reasonable, lawful, and effective meaning to all the terms." *RQSI Global Asset Allocation Master Fund, Ltd. v. APERCU Int'l PR LLC*, 2016 WL 1452434, at *3 (W.D. Ky. Apr. 13, 2016) (internal quotations omitted). Carhartt's definition of willful would fail to draw a clear line between what conduct would trigger the indemnity clause as being negligent, and what would trigger the clause as being willful. Carhartt argues that Mitchell either willfully acted by walking backwards and pulling the cart, or she "engaged in willful omissions by failing to proceed properly walking forward." (Def.'s Mot. for Summ. J. [DN 81-1], at 2). This conclusion of what would constitute a willful omission is essentially the same as what would constitute negligence. Under both, it presupposes that Mitchell failed to behave in a reasonably prudent manner by walking backwards while pulling the cart, and that this failure to adhere to a reasonable standard of care caused the unintentional result of her tripping on the floor mat. If the

Court were to interpret willful in this manner, then the two terms would essentially collapse into one, and a willful act or omission would mean nothing more than a negligent act or omission. Because the Court is to avoid interpretations that do not provide an effective meaning to all the included terms, Carhartt's interpretation is not a reasonable one, as it would lead to superfluous terms in the indemnification clause. Thus, the Court finds that the term is not ambiguous and it need not interpret the contract provision against the drafting party.

Because willfulness requires an intent to do the underlying act as well as an intent to bring about particular consequences, Mitchell did not act willfully when she walked backwards while pulling the medical cart and tripped on the floor mat. Therefore, Carhartt is not entitled to judgment as a matter of law on its contractual indemnity claim.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Carhartt's motion for summary judgment is **DENIED**.

cc: counsel of record